**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**RONNIE BROWN**                                                                **PLAINTIFF**


**VS.**                          **CASE NO. 3:11CV00041 HDY**


**MICHAEL J. ASTRUE, Commissioner,**
        **Social Security Administration**                          **DEFENDANT**


**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for supplemental security income (SSI).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome.  *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act.  Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on December 5, 2008, alleging disability since December 5, 2008. His application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge (ALJ).

Plaintiff was 33 years old at the time of the hearing, which was conducted on May 20, 2010. (Tr. 22-43). The plaintiff, who has a ninth grade education and no past relevant work, testified at the hearing. A vocational expert also testified. The plaintiff stated he last saw a doctor in March of 2009, except for an emergency room visit for a bleeding ulcer, for which he was given Zantac. (Tr. 25). When questioned by the ALJ, the plaintiff stated he went through the ninth grade, leaving school when he "got in trouble." He stated that he attempted to earn a GED, but was unsuccessful. (Tr. 27). He testified to taking Phenobarbital and Dilantin since 2001 for his seizures. He allowed that he occasionally forgot to take his medications. (Tr. 28). The plaintiff testified that he was released from prison on November 25, 2008, approximately ten days before he filed his application for disability. In February of 2009, the plaintiff stated that he dislocated his left shoulder when he fell from a tree while using an electric chain saw to cut limbs. (Tr. 30-31). The plaintiff indicated that he takes drug screens as part of his parole, and has passed all of his screens since being released from prison. (Tr. 31). The plaintiff testified to having Hepatitis-C, contracting it from drug use about nine years earlier. This causes pain in his back and side. (Tr. 32). He also stated he has a cyst in his left hand (he is right handed). (Tr. 32). On questioning by his attorney, the plaintiff indicated he might neglect to take his medications twice a week. According to the plaintiff, his medications make him sleepy. He also stated that he was having weekly seizures, with convulsions and loss of memory. The seizures last 15-20 minutes, according to the plaintiff. The plaintiff elaborated on his earlier testimony regarding his education, stating that he took special ed classes and his grades were

not "too good." (Tr. 34). He indicated he could read and write, though not at a high level of understanding, could add and subtract, but had trouble multiplying and dividing. He also stated that he was diagnosed with bipolar disorder while in prison. (Tr. 35). The plaintiff expressed his anxiety in being in a crowd, and stated that he tried to work after leaving prison, working in a window factory for about a month before being fired for being slow. (Tr. 36). The vocational expert was asked if there were jobs in the national economy for a person with the following abilities and limitations: ability to only occasionally lift 50 pounds and frequently lift 25 pounds; ability to stand and walk approximately 6 hours in a work day; ability to grasp, hold, and turn objects, and ability to bend and stoop frequently; limitations requiring them to avoid all exposure to hazards, machinery, heights, and driving vehicles; limitations requiring them to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; limitations requiring them to be limited to unskilled work (where interpersonal contact is only incidental to the work performed, complexity of any task would be learned and performed by rote, with few variables and requiring little judgment); limitations requiring that any supervision would be direct and concrete; and assuming the person to have a limited education, in his late thirties, and have no past relevant work. (Tr. 39-40). The vocational expert opined that jobs existed for this hypothetical person, and these jobs included stock clerks, order fillers, dishwasher, and kitchen helpers. (Tr. 40-41).

On July 29, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 10-17). The ALJ specifically found the medical evidence established the plaintiff has asthma, Hepatitis C, seizure disorder and borderline intellectual functioning. The ALJ found the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found

the plaintiff's testimony regarding his limitations were not fully credible. The ALJ held the plaintiff

has the residual functional capacity for unskilled medium work exertional activity, performing work

that does not involve concentrated exposure to air pollutants or tasks around dangerous machinery

or heights and where interpersonal contact is incidental to the work performed, where tasks are

learned and performed by rote with few variables and little judgment required, and where the

supervision is direct and concrete. Relying upon the testimony of the vocational expert, the ALJ

found the plaintiff could perform a significant number of jobs that exist in the national economy.

For example, the plaintiff could perform the jobs of stock room/linen room attendant and

dishwasher, according to the ALJ. As a result, the ALJ found the plaintiff was not disabled. The

Appeals Council, on January 8, 2011, denied plaintiff's request for review (Tr. 1-3), and plaintiff

subsequently filed suit with this Court.

The ALJ considered his impairments by way of the familiar five-step sequential evaluation

process.

The first step involves a determination of whether the claimant is involved in substantial

gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the

evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the

claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R.

§ 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether

the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling.

*Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

4

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of his request for reversal, plaintiff asserts that the ALJ erred in failing to find that the plaintiff has an impairment that meets Listing 12.05(C), and the ALJ erred in posing a hypothetical question to the vocational expert that did not accurately reflect the plaintiff's RFC. *Plaintiff's brief at 5-11.*

The plaintiff urges that he meets the Listing because he has a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional or significant work-related limitation of function. Plaintiff cites a full scale I.Q. score of 67 from Dr. Suzanne Gibbard, Ph.D. as meeting the first requirement, and plaintiff cites his asthma, Hepatitis C, seizure disorder and borderline intellectual functioning as satisfying the second requirement of the Listing. Plaintiff urges, "It stands to reason that when it is undisputed that these impairments are severe that they would in combination with one another pose more than a slight or minimal effect on his ability to perform work." Docket entry no. 10, page 7.

The flaw in this argument is that the Listing is not met by satisfying the two requirements cited by the plaintiff. We are guided by the Eighth Circuit Court of Appeals:

> Maresh [the plaintiff] argues that the ALJ erred in finding that his impairments
> do not meet Listing 12.05:

5

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

Maresh and the Commissioner disagree about what the Listing requires. According to the Commissioner, the introductory paragraph of the Listing requires that the deficits in adaptive functioning are initially manifested before age 22. According to Maresh, the introductory paragraph is merely an introduction that sets no requirements. Under Maresh's interpretation, he need only meet part C's requirements of (1) an IQ score of 60 through 70; and (2) an additional and significant work-related limitation of function.

This court agrees with the Commissioner that the requirements in the introductory paragraph are mandatory. The overall introduction to the mental disorders section states: "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id* at § 12.00.

*Maresh v. Barnhart*, 438 F.3d 897, 898 -899 (8th Cir. 2006). *See, also, Kliment v. Astrue*, 710

F.Supp.2d 831 (N.D. Iowa 2010).

The plaintiff, who alleged seizures and not any mental impairment in his application for

benefits, does not allege or prove that he had deficits in adaptive functioning which were initially

manifested before age 22. (Tr. 99, 133). Although there was some testimony of special ed

classes, the plaintiff does not offer persuasive testimony regarding deficits in adaptive

functioning. The ALJ addressed this issue:

6

In order for the claimant to meet the requirements of Listing 12.05, he must have evidence of mental retardation prior to age 22 related to problems with adaptive functioning, in addition to IQ scores in the retarded range.  The claimant has altered his statements regarding whether he was in special education and there is no record that he was hampered by severe delays in adaptive function prior to age 22, which would be consistent with retardation.  With regard to his seizure disorder, the claimant is required to have been compliant with treatment for at least three months while continuing to have seizures, in order to meeting Listings 11.01 or 11.03.  The record is clear that when the claimant takes his medication as prescribed, he has no seizures.  The evidence indicates that the claimant fails to meet the requirements of any Listing in the Listing of Impairments.

(Tr. 9, 12).

In summary, the plaintiff bears the burden of showing that his impairments meet the cited Listing.  In this instance, the plaintiff must satisfy three requirements, one of which is a showing that he has deficits in adaptive functioning initially manifested before the age of 22.  Even assuming that the plaintiff met the other requirements, he neither alleges nor proves the adaptive functioning prong of the Listing.  As a result, we find substantial evidence supports the Commissioner's decision.

The plaintiff faults the ALJ's hypothetical question, alleging the ALJ erred by ignoring the plaintiff's Hepatitis C condition, pain, and side effects of medication, as well as the opinion of Dr. Gibbard that the plaintiff would experience problems completing tasks and completing them in an acceptable time frame.  The ALJ thoroughly considered the relevant factors when examining the plaintiff's credibility, including the plaintiff's subjective assertions of pain, and of pain related to Hepatitis C.  The credibility analysis[1] is supported by substantial evidence.  While

---

[1]

The ALJ discounted the plaintiff's credibility due to inconsistent statements by plaintiff, noncompliance with medication requirements, the absence of physician-imposed limitations, poor work history, and the February 2009 incident when the plaintiff fell from a tree while using an electric chain saw (plaintiff indicated on a December 2008 questionnaire that the only yard work he could do was taking out the trash).  (Tr. 13-14, 145).

Dr. Gibbard did opine to issues with plaintiff's ability to complete tasks, the ALJ was not required to accept this finding to the extent that it was inconsistent with the remainder of the record.  Nevertheless, the hypothetical question takes into account, to a degree, Dr. Gibbard's findings, by limiting the complexity of plaintiff's work and the complexity of the supervision to be given.  It follows that the hypothetical question based upon the valid credibility assessment and the proper evaluation of Dr. Gibbard's findings is a question that is supported by substantial evidence. There is no merit to the second claim for relief.

In summary, the plaintiff's arguments are without merit for the reasons stated herein. Substantial evidence supports the Commissioner's decision.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this  26    day of January, 2012.


_____
UNITED STATES MAGISTRATE JUDGE